Joann G. PERRI, Appellant,

v.

Louis S. AYTCH, Individually and In His Capacity as Chief Probation Officer for Adult Probation of the Court of Common Pleas of the City and County of Philadelphia; and Adult Probation Department, Court of Common Pleas of the City and County of Philadelphia; and the Honorable Edward J. Bradley, Individually and In His Capacity as President Judge of the Court of Common Pleas of the City and County of Philadelphia; and Edward P. Carroll, Individually and in His Capacity as Chief Deputy Court Administrator for Management Services of the Court of Common Pleas of the City and County of Philadelphia; and Matthew Lewandowski, Individually and in His Capacity as Personnel Officer for the Court of Common Pleas of the City and County of Philadelphia; and Carl Divens, Individually and In His Capacity as Director of Administrative Services for the Court of Common Pleas of the City and County of Philadelphia; and the City and County of Philadelphia.

No. 83-1072.

United States Court of Appeals,
Third Circuit.

Argued Sept. 12, 1983.

Decided Dec. 22, 1983.

Terry L. Fromson (argued), Louis S. Rulli, Community Legal Services, Inc., Philadelphia, Pa., for appellant.

Russell S. Endo (argued), Asst. City Sol., Ralph J. Teti, Deputy City Sol., City of Philadelphia Law Dept., Philadelphia, Pa., for appellees.

Before SEITZ, Chief Judge, and GIBBONS and ROSENN, Circuit Judges.

## OPINION OF THE COURT

ROSENN, Circuit Judge.

Joann Perri was dismissed from her position as a clerk-typist, probationary status, by the Adult Probation Department of the Court of Common Pleas of the City and County of Philadelphia. Her termination followed an arrest on a drug related charge that was withdrawn by the county district attorney's office. Perri was removed from her job without a hearing. She then brought suit in the United States District Court for the Eastern District of Pennsylvania against several Philadelphia court officers in their official capacities alleging claims under 42 U.S.C. § 1983 and pendent state claims.

In her suit, Perri claims that she was deprived of property and liberty interests without due process of law. In dismissing Perri's action the court held that as Perri was a probationary employee, her dismissal did not violate constitutionally cognizable property or liberty interests. The court also found that her federal claim "for wrongful discharge" was found to be barred by a six-month statute of limitations. The district court granted defendants' motion for summary judgment and dismissed the state claims without prejudice. Perri appeals and we reverse.

I.

Joann Perri was hired on April 12, 1980 as a clerk-typist by the Adult Probation Department and placed on probationary status for a period of six months. Probationary employees are hired on a trial basis and are given merit evaluations at the end of their second and fifth months. A decision is then made whether to discharge the employee or to grant permanent status.

On June 27, 1980, after employment of two and one-half months, Perri was arrested and charged with knowingly and intentionally possessing a controlled substance and conspiracy. Three days later the department placed her on an involuntary leave of absence without pay pending the disposition of the charges against her. Her two-month employment evaluation was completed on July 16, 1980. She received a "satisfactory" rating—a rating in the middle category of the five performance rankings.

The state court, on August 28, 1980, suppressed the evidence relating to the criminal charges against Perri. The district attorney's office then withdrew the charges and the case was dismissed. Perri notified her employer of the dismissal of the charges.

Barry Cross, Deputy Court Administrator, thereupon recommended to Chief Deputy Court Administrator Carroll that Perri be returned to work immediately. This recommendation was approved by Carroll and Court Administrator Savitt. However, Louis Aytch, Chief Probation Officer, decided that Perri should not be reinstated.

On December 2, 1980, Aytch sent a letter informing Perri that she was discharged effective immediately from her employment because "[d]ue to the circumstances surrounding [her] arrest, [her] continued employment [was] not in the best interests of the department." Aytch based his decision on Perri's arrest as well as on information provided to him by the district attorney's office. Aytch also denied reinstatement because Perri had been absent from work (albeit involuntarily at the request of the employer) and expressed concern that if Perri were retained, she might be placed in a position of access to sensitive records.

## II.

### A.

■ Perri claims that the dismissal from her job without a hearing deprived her of a property interest without due process of law. Property interests are created by state law. As the Supreme Court ruled in *Bishop v. Wood,* 426 U.S. 341, 96 S.Ct. 2074, 48 L.Ed.2d 684 (1976), "A property interest in employment can, of course, be created by ordinance, or by an implied contract. In either case, however, the sufficiency of the claim of entitlement must be decided by reference to state law." *Id.* at 344, 96 S.Ct. at 2077. In this case, we must apply the law of Pennsylvania to determine whether Perri was deprived of a property interest.

■ In general, administrative agencies in Pennsylvania do not have the power to grant tenure absent the legislature's permission to do so. *See Scott v. Philadelphia Parking Authority,* 402 Pa. 151, 154–59, 166 A.2d 278, 280–83 (1960); *Mahoney v. Philadelphia Housing Authority,* 13 Pa.Commw. 243, 245–47, 320 A.2d 459, 460–61 (1974), *cert. denied,* 419 U.S. 1122, 95 S.Ct. 806, 42 L.Ed.2d 822 (1975). The courts have thus held that attempts by agencies to provide employees with tenure fail to create a property interest. In *Banks v. Redevelopment Authority of Philadelphia,* 416 F.Supp. 72 (E.D.Pa.1976), *aff'd,* 556 F.2d 564 (3d Cir.), *cert. denied,* 434 U.S. 929, 98 S.Ct. 414, 54 L.Ed.2d 288 (1977), the court held that the "RDA [Redevelopment Authority] had no power to create rules which would prevent dismissal at will." *Id.* at 74. The court noted:

> Though it may seem harsh for a state agency to fire a permanent employee without cause or hearing, neither the federal constitution, nor, in this case, state law, provides a remedy. "The federal court is not the appropriate forum in which to review the multitude of personnel decisions that are made daily by public agencies." *Bishop v. Wood, supra,* 426 U.S. at 349, 96 S.Ct. at 2080, 44 U.S.L.W. at 4822–4823. The decision that the RDA may grant tenure may be made by the state legislature, not by this court.

*Id.* In the present case, the district court cited *Banks* and ruled that Perri did not have a constitutionally cognizable property interest in her employment.

Pennsylvania courts have, however, recognized the importance of preserving the independence of the judiciary by allowing it to hire and fire its own employees free of interference from the other branches of government. In *Beckert v. AFSCME,* 56 Pa.Commw. 572, 425 A.2d 859 (1981), *aff'd,* 501 Pa. 70, 459 A.2d 756 (1983), the court enjoined the Pennsylvania Labor Relations Board from assuming jurisdiction over an unfair labor practice charge made by judicial employees against their employer. The employees had urged the court to interpret the state Public Employee Relations Act (PERA) to cover employment in the state

judiciary. The court held that "[t]he legislature may not consistent with that [separation of powers] doctrine make the discharge of a judicial employee the subject of a proceeding and decision by an administrative agency of another branch of government." 56 Pa.Commw. at 582, 425 A.2d at 863. Although the legislature could not impose an external dispute resolution system on the judiciary, the court noted that the judiciary was free to establish its own grievance procedures:

> It would seem that a court of common pleas could in the exercise of its constitutional power provide for a grievance or hearing procedure prior to the discharge of a judicial employee. Such a procedure could be created by the court's own initiative or be the result of an agreement with a representative of the employees.

*Id.* The *Beckert* decision was reaffirmed in *Eshelman v. Commissioners of the County of Berks,* 62 Pa.Commw. 310, 436 A.2d 710 (1981), in which the commonwealth court, an intermediate appellate court, set aside an arbitration award limiting the control by the judiciary over its employees. The court stressed that an essential characteristic of an independent judiciary is the power to hire, supervise, and discharge its employees. "That power may not, consistent with the constitutional doctrine of separation of powers, be policed, encroached upon, or diminished by another branch of government." 62 Pa.Commw. at 314–15, 436 A.2d at 712.

### B.

■ The Court of Common Pleas in Philadelphia has promulgated personnel regulations to govern its treatment of employees. These regulations apply to permanent employees and probationary employees. Although probationary employment is commonly at the will of the employer, in this instance the regulations fixed probationary employment for a period of six months and specifically provided that dismissal during the probationary period shall be "for just cause only." The terms of the probationary period are described in Court Administration Personnel Regulation No. 15.[1]

Court Administration Personnel Regulation No. 8 governs dismissal, demotion, reduction in pay, and suspension.[2] In particular, Regulation 8.1 mandates that "[a]ny dismissal, demotion, reduction in pay and/or suspension of any permanent employee, or

---

1. Court Administration Personnel Regulation No. 15, Probationary Period, provides as follows:

    15.1 *Appointments from Eligible Lists*
    All persons appointed to the Court Service from an appropriate eligible list in accordance with the provisions of the Courts' merit regulation shall be subject to a probationary period of six (6) months. The period of probation is expressly understood to be part of the entrance examination and that the status of the appointee as a permanent employee is not approved until successfully completing their period of probation.
    15.2 *Transfer and/or Promotion during the Probationary Period*
    In order to properly evaluate the employee's performance the department during the first 90 days of the probationary period shall not transfer the employee from the position to which the employee was originally assigned upon appointment, nor shall the employee be eligible for promotion to a higher level class. During the remainder of the probationary period the employee may be transferred to a different position with the same class title, or promoted to a higher level position as a result of his standing on an appro-

priate eligible list and in conformance with the procedures for certification of names of persons from an eligible list.

2. The applicable sections of Regulation No. 8 provide:

    8.1 Any dismissal, demotion, reduction in pay and/or suspension of any permanent employee, or rejection of a probationary employee in the Court Service shall be for just cause only.
    \*   \*   \*   \*   \*   \*
    8.11 An employee shall be notified in writing of any proposed action to be taken as listed in 8.1 above. Such notice shall in all cases list the bases for the action with each basis to be clearly supported by specific detail sufficient to justify the action being taken.
    \*   \*   \*   \*   \*   \*
    8.21 At any time during the probationary period, the appropriate Chief Deputy Court Administrator, or Chief Probation Officer, Prothonotary, Jury Selection Commissioner, or Municipal Court Administrator may dismiss an employee for just cause in accordance with section 8.11 above.

rejection of a probationary employee in the Court Service shall be for just cause only." Regulation 8.21 states: "At any time during the probationary period, [a court officer] may dismiss an employee for just cause . . . . "

On its face, these regulations inexplicably appear to guarantee that a probationary employee, just as a permanent employee, will not be terminated except for just cause. The employer's regulations thereby grant an employee an expectation interest in continued employment during the six-month probationary period. Although the court of common pleas could have elected not to confer a property interest in probationary employees, having conferred it, it may not deprive them of their interest without appropriate procedural safeguards.

■ The question remains whether the judiciary has the power under Pennsylvania law to create a property interest in its workers' probationary period of employment. Under the Pennsylvania constitution, the Supreme Court of Pennsylvania may appoint such staff as is necessary for the prompt disposition of the business of the court. Pa. Const. Art. 5, § 10(b). Under 42 Pa.Cons.Stat.Ann. § 1724(a) (Purdon 1981), "the governing authority shall exercise general supervisory and administrative authority over the personnel of the system" and may "adopt measures applicable to personnel of the system for the better coordination of the work of the unified judicial system and other governmental units."

In the instant case, the judiciary has decided that probationary employees may not be dismissed without just cause during their six-month probationary period. This grant would appear to be within the authority of the judiciary's power to exercise "supervisory and administrative authority" over its employees. Thus, Perri at least had a property interest in her probationary period of employment.

## C.

■ Even though Perri had a property interest in her probationary employment, she still must demonstrate that she was deprived of the interest without due process of law. A plaintiff claiming a due process violation "while relying upon state law to establish his property right, looks to federal law to define procedural due process." *Pedersen v. South Williamsport Area School District,* 677 F.2d 312, 316 (3d Cir.), *cert. denied,* —— U.S. ——, 103 S.Ct. 305, 74 L.Ed.2d 285 (1982). The Supreme Court has found that the procedural requirements vary with the nature of the case and that competing policy interests must be balanced to determine what process is due. *See Mathews v. Eldridge,* 424 U.S. 319, 334–35, 96 S.Ct. 893, 902–3, 47 L.Ed.2d 18 (1976). Although the Court has stressed a flexible approach to the assessment of the requisite procedures, "[t]he Court has consistently held that some kind of hearing is required at some time before a person is finally deprived of his property interests." *Wolff v. McDonnell,* 418 U.S. 539, 557–58, 94 S.Ct. 2963, 2975, 41 L.Ed.2d 935 (1974). In *Logan v. Zimmerman Brush Co.,* 455 U.S. 422, 102 S.Ct. 1148, 71 L.Ed.2d 265 (1982), the Court stressed that "the Due Process Clause grants the aggrieved party the opportunity to present his case and have its merits fairly judged. Thus it has become a truism that '*some* form of hearing' is required before the owner is finally deprived of a protected property interest." *Id.* at 433, 102 S.Ct. at 1156.

■ In this case, Aytch notified Perri of her dismissal by a terse letter informing her that she was terminated "due to the circumstances surrounding [her] arrest." Perri, however, was entitled to a statement of the specific reasons for the dismissal and some form of hearing. *See Goss v. Lopez,* 419 U.S. 565, 579, 95 S.Ct. 729, 738, 42 L.Ed.2d 725 (1975). The officials who discharged Perri not only failed to meet the constitutional requirements but they also disregarded their own personnel procedures. The personnel regulations contain an express provision for involuntary absences.[3]

---

**3.** Court Administration Personnel Regulation No. 5.4 governs involuntary leaves of absence from employment.

The provision indicates that an employee who has been arrested and charged with a crime is placed on an involuntary leave ·of absence. If the employee is not convicted, the leave of absence is terminated. The employee is then reinstated "unless it is determined that disciplinary action pursuant to Court Personnel Regulation # 8 is warranted." Regulation No. 8 contains the "just cause" provision and also requires that an employee be notified in writing of "the bases for the action with each basis to be clearly supported by specific detail sufficient to justify the action being taken." Aytch's letter of termination to Perri did not meet this standard.

The district court erred in ruling that Perri was not deprived of a property interest without due process of law. She is entitled to a termination hearing by her employer to determine whether there was just cause for her dismissal.

### III.

Perri also claims that the defendants' failure to provide her with adequate procedural safeguards at the time of her discharge deprived her of a liberty interest without due process of law. She argues that her discharge "amidst stigmatizing allegations of illegal conduct of which she was never convicted . . . invokes procedural safeguards under *Roth*."

■ In *Board of Regents v. Roth*, 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972), the Supreme Court discussed the conditions under which a terminated state employee would be entitled to a hearing. In that case, the Supreme Court held that a state university did not deprive a professor of a liberty interest when it failed to rehire him. The Court, however, noted:

> The State, in declining to rehire the respondent, did not make any charge

against him that might seriously damage his standing and associations in his community. It did not base the nonrenewal of his contract on a charge, for example, that he had been guilty of dishonesty, or immorality. Had it done so, this would be a different case. For "[w]here a person's good name, reputation, honor, or integrity is at stake because of what the government is doing to him, notice and an opportunity to be heard are essential."

*Id.* at 573, 92 S.Ct. at 2707. The Supreme Court suggested in *Board of Regents v. Roth* that procedural guarantees attach in connection with an employee's termination if either of two events occur: charges are made that "might seriously damage his standing and associations in his community," *id.,* or if the state in dismissing the employee "imposed on him a stigma or other disability that foreclosed his freedom to take advantage of other employment opportunities." *Id.* An employee is entitled to a hearing, however, "[o]nly if the employer creates and disseminates a false and defamatory impression about the employee in connection with his termination . . . ." *Codd v. Velger,* 429 U.S. 624, 628, 97 S.Ct. 882, 884, 51 L.Ed.2d 92 (1977).

■ Perri alleges that the false accusation made in connection with her termination impugns her good character and reputation, is part of her personnel file, and can reasonably be expected to be communicated to prospective employers and prevent her from obtaining alternative employment. If true, these conditions would require the employer to provide procedural safeguards.

The district court granted the defendants' motion for summary judgment, holding that Perri "has not demonstrated that termination of plaintiff's probationary employment violated any constitutionally cog-

---

(a) Regulation 5.42 states:

At the direction of the Court Administrator any Court employee arrested for and charged with a crime other than by the filing of a private criminal complaint, shall be placed on Involuntary Leave of Absence until such charges are finally disposed.

(b) Regulation 5.46 states:

Upon disposition other than conviction, the Involuntary Leave of Absence shall be terminated. The appropriate President Judge shall review the entire matter and reinstate the employee unless it is determined that disciplinary action pursuant to Court Personnel Regulation # 8 is warranted.

nizable liberty interest." The district court erred in disposing of this issue by summary judgment. It is undisputed that Perri was not terminated for poor work performance; her dismissal was predicated on the criminal arrest. The district court should have permitted Perri to develop the facts with respect to her allegation of a liberty interest violation. On the record as it is, we are unable to make a determination whether a liberty interest was violated. On the other hand, if this case were to go to trial, the defendants might demonstrate that the charges against Perri were accurate. In the alternative, they might show that the reasons for the dismissal were neither published nor disseminated and therefore did not affect her standing in the community or foreclose alternative employment. At this stage, however, Perri has alleged the required elements and provided sufficient evidence to avoid summary judgment on her claim of a deprivation of a liberty interest without due process of law.

## IV.

■ We now turn to Perri's claim that the district court erred in applying a six-month statute of limitations to her federal claim for wrongful discharge. In actions under 42 U.S.C. § 1983, it is necessary to borrow "the state law of limitations governing an analogous cause of action." *Board of Regents v. Tomanio,* 446 U.S. 478, 483–84, 100 S.Ct. 1790, 1794, 64 L.Ed.2d 440 (1980). The district court ruled that "[i]nasmuch as plaintiff states a claim for wrongful discharge, the action is barred by the six month statute of limitations."

■ Prior to this court's decision in *Knoll v. Springfield Township School District,* 699 F.2d 137 (3d Cir.1983), *petition for cert. filed,* 51 U.S.L.W. 3859 (U.S. May 31, 1983) (No. 82–1889), it was not clear which of the residuary provisions of Pennsylvania law should apply. The choice was between 42 Pa.Cons.Stat.Ann. § 5522(b)(1) (Purdon 1981), a six-month provision, or 42 Pa.Cons.Stat.Ann. § 5527(6) (Purdon 1981), a six-year provision. The district court followed the decision of *Clyde v. Thornburgh,*

533 F.Supp. 279 (E.D.Pa.1982), and ruled that the six-month statute applied. Subsequent to the court's decision, this court ruled in *Knoll v. Springfield Township School District,* 699 F.2d 137 (3d Cir.1983), *petition for cert. filed,* 51 U.S.L.W. 3859 (U.S. May 31, 1983) (No. 82–1889), that the six-year statute should be applied in section 1983 actions. Perri filed this action well within the six-year period. Therefore, the district court's ruling that her action was barred by the statute of limitations must be reversed.

## V.

To summarize, Perri was deprived of a property interest in her employment as a clerk-typist, probationary status, without due process of law. Perri is entitled to a statement of the specific reasons for the dismissal and she should receive an opportunity to present her case at a termination hearing to be conducted by her employer. The statute of limitations does not bar her federal claims. The district court also erred in summarily rejecting Perri's claim that the defendants deprived her of a liberty interest without due process of law. Were this Perri's only claim, we would send the issue back to the district court to determine whether she is entitled to a termination hearing. There is no need to do so, however, because we are granting a hearing on account of the deprived property interest.

The remainder of Perri's claims need not be adjudicated prior to the termination hearing. Pending such hearing, Perri may be entitled to interim relief which, upon application made, should be addressed to the district court.

The judgment of the district court will be reversed and the case will be remanded to the district court with instructions to order the defendants to provide the plaintiff with a specific statement of the reasons for her dismissal and to grant her a termination hearing. In the meantime, the district court will, upon petition of the plaintiff, determine what interim relief if any may be appropriate.